1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11   DANIEL GONZALEZ,                    Case No.:  19-cv-2326 GPC (WVG)
12                          Petitioner,
                                         **ORDER DENYING PETITION FOR**
13   v.                                  **A WRIT OF HABEAS CORPUS AND**
                                         **DENYING CERTIFICATE OF**
14   RAYMOND MADDEN, Warden,             **APPEALABILITY**
15                          Respondent.
16

17          Daniel Gonzalez ("Petitioner") is a state prisoner proceeding through counsel with
18   a Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2254, accompanied by a
19   memorandum in support of the Petition and Appendix.  (ECF No. 1.)  Petitioner challenges
20   his conviction in San Diego Superior Court case number SCS273327 for second degree
21   murder and assault with a deadly weapon, for which he was sentenced to 40 years to life
22   plus 7 years consecutive.  (Id.; see also ECF No. 5-7 at 7 n.7, Lodgment No. 7.)
23          Petitioner raises four claims of error, alleging: (1) the trial court erred by failing to
24   instruct that an aggressor using non-deadly force regains the right to self-defense when the
25   opponent counter assaults with deadly force; (2) the trial court erred in failing to instruct
26   that a defendant who provokes a fight regains his right to self-defense when the opponent's
27   use of force is not legally justified; (3) the trial court erred in admitting unduly prejudicial,
28   unsanitized and highly inflammatory testimony by Juan Carlos Lopez regarding threats

allegedly made to him by Petitioner; and (4) cumulative error impacted his trial proceedings, in violation of his federal right to present a complete defense under the Sixth and Fourteenth Amendments which resulted in a fundamentally unfair trial. (See ECF No. 1 at 1-10; ECF No. 1-2 at 10-39.)

Respondent has filed an Answer and lodged relevant portions of the state record. (ECF Nos. 5, 12-13.) Respondent maintains habeas relief is unavailable because "[t]o the extent the claims in Grounds One through Three challenge the trial court's discretion under state law, federal habeas relief is not available," and "[i]n any event, the state court's rejection of all claims was not contrary to, nor an unreasonable application of, United States Supreme Court precedent based on the facts presented." (ECF No. 12 at 6, citing 28 U.S.C. § 2254(d).) Petitioner has filed a Traverse, in which he maintains habeas relief is warranted based on the claims presented. (ECF No. 14.)

## I.   FACTUAL BACKGROUND

Under Summers v. Mata, state court factual findings are presumptively reasonable and entitled to deference in these proceedings, 449 U.S. 539, 545-47 (1981). The following facts and background are taken from the state appellate court opinion affirming Petitioner's conviction in People v. Chavez, et al., D069533 (Cal. Ct. App. D069533, Mar. 28, 2018), which can be found at ECF No. 5-7.

> On June 17, 2014, the Rincon Del Mar restaurant in National City was filled with customers, many of whom were there to watch the World Cup soccer match between Mexico and Brazil. There was one group of customers with ties to Tijuana, including Gonzalez, Chavez, Alfonso Vasquez, Vincente Roldan, and brothers Vicente Gutierrez (Vicente) and Rafael Gutierrez (Rafael). Another group of customers had ties to National City, including Josue Crook, Edward (also known as Eddie) Lopez, Jesus Morfin, Anthony Aguilar, Tomas (also known as Tommy) Lujan, and Enrique Chavez.[2]
>
> [2] To avoid confusion, we refer to defendant Salvador Chavez by his last name and Enrique Chavez by his full name.
>
> After the match, Rafael argued with Morfin in front of the restaurant about whether he had a problem with his brother Vicente. When Morfin

approached Vicente, Vicente punched him in the face, causing him to fall to the ground unconscious.  Vicente and Rafael beat Morfin while he was unconscious on the ground.  Meanwhile, Gonzalez hit Aguilar in the face, causing him to fall unconscious onto Lujan who had been standing nearby. While on the ground, Lujan was punched by Gonzalez.  Lujan escaped by crawling under a flatbed truck that was parked on the street directly in front of the restaurant.  When Lujan tried to get out from under the truck, Gonzalez kicked him in the face.  From under the truck, Lujan saw Gonzalez pacing back and forth, holding a pistol by his side.  During the fight, Gonzalez and Chavez at times were back-to-back and then face-to-face.  Other members of the two groups also began fighting with each other.

After Juan Carlos Lopez, the restaurant's owner, broke up the initial physical altercation, the combatants moved away from the restaurant. Rafael and Vicente ran southward as Eddie Lopez chased them.[3]  When Eddie Lopez was about 15 feet away from them, he threw a beer bottle at them, possibly striking one of them, and then ran back toward the restaurant.  While Eddie Lopez was running after them, Gonzalez ran in Eddie Lopez's direction and, from a distance, pointed a gun at his back.  Crook, who had just come out of the restaurant, and Lujan approached Gonzalez from behind and Crook tapped him on the shoulder.  Gonzalez spun around and shot Crook twice at point-blank range, striking him in the chest near his armpit and in the upper right side of his back.[4]  Immediately before being shot, Crook put up his hands and began turning away from Gonzalez.  Except for possibly a plastic cup, Crook did not have anything in his hands at the time and no weapons were found on or near him.  Gonzalez then pointed his gun at Lujan, but Juan Carlos Lopez intervened and begged him not to shoot.  Crook died from his gunshot injuries.

[3] We refer to Juan Carlos Lopez and Eddie Lopez by their full names to avoid confusion.

[4] According to Lujan, at the time of the shooting, he (Lujan) was 12 feet away from where the shooting occurred.

While Eddie Lopez was running away from the Gutierrez brothers, he saw Chavez chasing after him with a knife in his hand.  However, immediately after Gonzalez shot Crook, Chavez stopped his chase and ran eastward with Gonzalez.  Chavez and Gonzalez got into a black truck and fled the scene. Remaining at the scene, Eddie Lopez felt his shirt was wet and then realized he had been stabbed in the back.[5]

19-cv-2326 GPC (WVG)

[5] A video recording from the restaurant's surveillance camera in the exterior front area of the restaurant showed, inter alia, Chavez at the time of the initial physical altercation holding an object in a manner consistent with someone holding a folding knife. However, because the camera's angle or range was limited, the recording did not show Eddie Lopez throwing the beer bottle at the Gutierrez brothers, Gonzalez pointing his gun at Eddie Lopez, Crook approaching Gonzalez from behind and tapping his shoulder, Gonzalez turning and shooting Crook, or Chavez stabbing Eddie Lopez in the back.

Gonzalez was arrested in Mexico and extradited to the United States. Police searched Chavez's house and found two folding knives and clothing matching what he was seen wearing on the day of the shooting. Juan Carlos Lopez told police the restaurant's surveillance camera was inoperable because a car crashed into the restaurant two to three weeks before the shooting. However, police searched the restaurant and found a flash drive containing a five- to seven-minute video recording from one of its surveillance cameras, which recording showed, inter alia, the initial physical altercation between the two group's members and Crook placing an object on the flatbed truck and then picking it back up before the shooting. During a police interview, Juan Carlos Lopez admitted he initially lied about not seeing who shot Crook because he feared retaliation. Cell phone records showed there were 12 calls between Gonzalez's phone and Chavez's phone on the day of the shooting.

An information charged Gonzalez and Chavez with the murder of Crook (§ 187, subd. (a)) and the assault on Eddie Lopez with a deadly weapon (§ 245, subd. (a)(1)). It also alleged that Gonzalez committed the murder while out of custody on bail pending a final judgment for a prior felony offense (§ 12022.1, subd. (b)), personally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)), and had served three prior prison terms (§ 667.5, subd. (b)).

At the joint trial of Gonzalez and Chavez, the prosecution presented evidence substantially as described *ante*. In his defense, Gonzalez presented, inter alia, the testimony of Roldan, who stated he was hit during the fight and knocked to the ground. Roldan did not see either Gonzalez or Chavez attack or shoot anyone. In his defense, Chavez presented the testimony of Scott Fraser, an eyewitness identification expert, who testified generally about how alcohol, memory convergence, and stress could result in an eyewitness's faulty memory. The jury found Gonzalez and Chavez guilty on both counts

4

and found true the firearm allegation.[6]  The trial court sentenced Gonzalez to an indeterminate term of 40 years to life in prison plus a consecutive determinate term of seven years.[7]  The court sentenced Chavez to an indeterminate term of 15 years to life in prison plus a consecutive determinate term of two years.  Gonzalez and Chavez each timely filed a notice of appeal challenging the judgments against them.

> [6] Gonzalez subsequently admitted the truth of the other allegations.

> [7] The trial court imposed a total consecutive determinate term of seven years, consisting of two years for count 2, two years for the section 12022.1, subdivision (b), enhancement, and three years for Gonzalez's three prior prison terms (§ 667.5, subd. (b)). As Gonzalez notes, the court's minute order and abstract of judgment do not accurately reflect the consecutive determinate sentence it imposed.  Instead of the two-year term the court imposed for count 2, they erroneously indicate a three-year term was imposed.  Accordingly, we direct the trial court to issue a new minute order nunc pro tunc and amended abstract of judgment to reflect the correct consecutive two-year term imposed for count 2.

(ECF No. 5-7 at 3-7.)

## II.   PROCEDURAL HISTORY

On June 18, 2015, after a joint trial with co-defendant Chavez, a San Diego County jury found Petitioner guilty of second-degree murder in violation of Cal. Penal Code § 187(a), assault with a deadly weapon in violation of Cal. Penal Code § 245(a)(1), and found true the allegation Petitioner intentionally and personally discharged a firearm, a handgun, and proximately caused great bodily injury and death to a person other than an accomplice during the commission and attempted commission of the murder within the meaning of Cal. Penal Code § 12022.53(d).  (Clerk's Transcript ["CT"] 1101, 1103-04, ECF No. 13-5, Lodgment No. 13.)  On December 11, 2015, Petitioner was sentenced to 40 years to life, plus 7 years consecutive.  (ECF No. 1 at 1; see also ECF No. 5-7 at 7 n.7.)

Petitioner appealed his judgment to the California Court of Appeal, raising the four claims presented in the instant Petition in addition to several other claims not raised here.

(ECF No. 5-2, Lodgment No. 2.)  On March 28, 2018, the state appellate court issued a reasoned opinion affirming Petitioner's judgment and directing the superior court to issue a minute order correcting an error in the abstract of judgment and prepare an amended abstract of judgment in accordance with the correction.  (ECF No. 5-7.)  Petitioner thereafter filed a petition for rehearing, which the state appellate court summarily denied.  (ECF Nos. 5-9, 5-10, Lodgment Nos. 9-10.)  On May 3, 2018, Petitioner filed a petition for review in the California Supreme Court, which on June 27, 2018, was summarily denied without a statement of reasoning or citation to authority.  (ECF Nos. 5-11, 5-12, Lodgment Nos. 11-12.)

## III.   PETITIONER'S CLAIMS

(1) Trial court error in failing to sua sponte instruct the jury that an aggressor using non-deadly force regains the right to self-defense when the opponent counter assaults with deadly force, violating Petitioner's federal constitutional rights to due process, a fair trial and to present a complete defense.

(2) Trial court error in failing to sua sponte instruct the jury that a defendant who provokes a fight regains his right to self-defense when the opponent's use of force is not legally justified, violating Petitioner's federal constitutional rights to due process, a fair trial and to present a complete defense.

(3) Trial court error in admitting unduly prejudicial, unsanitized and highly inflammatory testimony by Juan Carlos Lopez regarding threats allegedly made to him by Petitioner, violating Petitioner's federal constitutional rights.

(4) Cumulative error impacted Petitioner's trial proceedings, violating Petitioner's federal right to due process and resulting in a fundamentally unfair trial.

(ECF No. 1 at 1-10; ECF No. 1-2 at 10-39.)

## IV.   DISCUSSION

### A.   Standard of Review

A state prisoner is not entitled to federal habeas relief on a claim that the state court adjudicated on the merits unless the state court adjudication: "(1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Harrington v. Richter, 562 U.S. 86, 97-98 (2011), quoting 28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Id.; Bruce v. Terhune, 376 F.3d 950, 953 (9th Cir. 2004). With respect to section 2254(d)(2), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007), citing Williams, 529 U.S. at 410. "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" Rice v. Collins, 546 U.S. 333, 338-39 (2006), quoting 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 562 U.S. at 101, quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Richter, 562 U.S. at 102. In a federal habeas action, "[t]he petitioner carries the burden of proof." Cullen v. Pinholster,

563 U.S. 170, 181 (2011), citing <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (per curiam).

### B. <u>Merits of Claims</u>

Petitioner presented all four claims in the instant Petition to the California Supreme Court in his petition for review, which was denied without a statement of reasoning or citation to authority. (<u>See</u> ECF Nos. 5-11, 5-12.) Petitioner also previously presented these same four claims to the California Court of Appeal. (<u>See</u> ECF No. 5-2.) The state appellate court denied each of Petitioner's four claims on the merits in a reasoned opinion. (<u>See</u> ECF No. 5-7.)

The Supreme Court has repeatedly stated that a presumption exists "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991); <u>see also</u> <u>Wilson v. Sellers</u>, 584 U.S. ___, 138 S.Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.") In the absence of any argument or grounds in the record to rebut this presumption, the Court will "look through" the California Supreme Court's silent denial to the reasoned opinion issued by the state appellate court on each of Petitioner's four claims. <u>See</u> <u>Ylst</u>, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them *no* effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play.") (footnote omitted).

### 1. <u>Claim One</u>

In Claim One, Petitioner asserts, as he did in state court, that the trial court's failure to sua sponte instruct the jury that an aggressor using non-deadly force regains the right to self-defense when the opponent counter assaults with deadly force deprived him of a claim of self-defense in violation of his federal constitutional right to due process, to present a complete defense and to a fair trial. (ECF No. 1 at 5; ECF No. 1-2 at 10-25.) Respondent maintains habeas relief is unavailable because Claim One "fails to state a federal question"

and "[i]n any event, the state appellate court's rejection of this claim was reasonable." (ECF No. 12-1 at 8.)

As noted above, the Court looks through the state supreme court's silent denial to the opinion issued by the state appellate court, which rejected this claim in a reasoned decision as follows:

Gonzalez contends the trial court erred by instructing with CALCRIM No. 3471 on self-defense, but without its optional bracketed language stating that an aggressor who initially uses only nondeadly force regains the right to self-defense when his or her opponent counters with deadly force.

A

The trial court instructed with CALCRIM No. 3471 on the right to self-defense in circumstances of mutual combat or where the defendant was the initial aggressor, stating:

"A person who engages in mutual combat or who starts a fight has a right to self-defense only if:

"1. He actually and in good faith tried to stop fighting;

"AND

"2. He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting;

"AND

"3. He gave his opponent a chance to stop fighting.

"If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight.

"A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose."

In so instructing, the court omitted optional bracketed language from CALCRIM No. 3471, which states:

> "However, if the defendant used only nondeadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend (himself/herself) with deadly force and was not required to try to stop fighting(,/ or) communicate the desire to stop the opponent(, or give the opponent a chance to stop fighting)."

### B

As discussed *ante*, "even in the absence of a request, a trial court must instruct on general principles of law that are commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case. (Citations.)  The trial court is charged with instructing upon every theory of the case supported by substantial evidence, including defenses that are not inconsistent with the defendant's theory of the case. (Citations.)" (*Montoya*, *supra*, 7 Cal.4th at p. 1047.)  Evidence is substantial only if a reasonable jury could find it persuasive. (*Young*, *supra*, (2005) 34 Cal.4th at p. 1200.)

### C

Gonzalez argues the trial court should have included the bracketed language, quoted *ante*, when instructing the jury with CALCRIM No. 3471 (i.e., if the jury found he initially used only nondeadly force and Crook responded with sudden and deadly force such that he could not withdraw from the fight, then he (Gonzalez) regained the right to defend himself with deadly force, whether in perfect or imperfect self-defense).  However, contrary to Gonzalez's assertion, substantial evidence did not support the bracketed language the court omitted from CALCRIM No. 3471.  The main premise of Gonzalez's argument is that there is substantial evidence to support a finding that Crook used, or appeared to use, deadly force (i.e., a heavy glass object) against him, but the only substantial evidence of a heavy glass object was regarding the beer bottle thrown by Eddie Lopez at the Gutierrez brothers. That bottle was not thrown at or toward Gonzalez, but was instead thrown in the opposite direction by Eddie Lopez, and Gonzalez was not charged with the murder of Eddie Lopez.

Nevertheless, Gonzalez argues there is substantial evidence to support a finding that the object possibly held by Crook when he (Crook) tapped him on the shoulder was, in fact, a heavy glass object.  However, as we discussed in part IV(C) *ante* and which discussion we incorporate herein, the evidence admitted at trial (including the video recording and still photographs from the surveillance camera and Juan Carlos Lopez's testimony) does not support a finding that Crook picked up a glass object off of the flatbed truck before heading toward Gonzalez.  Instead, he, at most, picked up a plastic michelada cup before heading toward Gonzalez.

At trial, Juan Carlos Lopez, as discussed in section IV(C) *ante*, described the restaurant's plastic michelada cups and its glass shrimp cocktail cups and stated they looked "completely different."  Likewise, as discussed in section IV(C) *ante*, our independent review of the video recording and still photographs therefrom confirms that the object that Crook placed on the flatbed truck and later picked up before heading southward could not reasonably be found to be one of the restaurant's shrimp cocktail glasses.

We likewise reject Gonzalez's alternative argument that there is substantial evidence to support a finding the object possibly held by Crook, if not a shrimp cocktail glass, was instead a beer glass with a "waist" in its middle or other similarly shaped goblet or container made of glass and not a plastic michelada cup with straight sides.  The evidence discussed *ante* is inconsistent with such a finding and instead supports a finding only that the object was a plastic michelada cup, which could not have posed to Gonzalez any real or perceived threat of imminent danger of death or great bodily injury.  Gonzalez merely speculates that Crook may have been holding a heavy object made of glass when he approached Gonzalez from behind.[16]  His suggested interpretation of the object on the flatbed truck shown in the video recording and still photographs from the surveillance camera is not supported by our independent viewing of that evidence.

[16] Gonzalez further speculates that the broken glass found by police near the scene may have been from a glass goblet or other glass object held by Crook.  However, National City Police Detective Alejandro Garcia testified that the "broken bottle" or broken glass that he saw was located in front of a vacant building at 330 Highland Avenue that was two stores away from the most southward area where blood drops, presumably from Crook, were found (i.e., in front of a bakery) and therefore that broken glass was not photographed.  Therefore, it cannot reasonably be

inferred that the broken glass found by police was from a glass object held by Crook at the time of the incident.

Accordingly, based on our review of the record and relevant evidence, there is insufficient evidence to support a finding that Crook was holding, or appeared to be holding, a heavy shrimp cocktail glass, glass goblet, or other object that appeared to be made of glass when he approached Gonzalez from behind and tapped him on the shoulder.   Absent substantial evidence supporting such a finding, there was insufficient evidence to support a finding Gonzalez actually believed Crook posed an imminent danger of death or great bodily injury to him or others that would justify Gonzalez's use of perfect or imperfect self-defense by shooting Crook.   Accordingly, we conclude the trial court did not err by omitting the bracketed language from CALCRIM No. 3471, which would have allowed the jury to find Gonzalez regained his right to defend himself if, inter alia, it found Crook used, or appeared to use, deadly force against him.  (*Montoya*, *supra*, 7 Cal.4th at p. 1047.)

(ECF No. 5-7 at 38-42.)

As an initial matter, Respondent asserts this claim "fails to state a federal question," stating: "It is well established that the issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus," and: "A petitioner cannot transform a state law issue into a federal one by simply asserting a due process violation."  (ECF No. 12-1 at 8, citing Estelle v. McGuire, 502 U.S. 62, 68 (1991) and Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).)  Respondent is correct that claims of error in the application of state law are generally not cognizable on federal habeas review.  See McGuire, 502 U.S. at 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); see also Rhoades v. Henry, 611 F.3d 1133, 1142 (9th Cir. 2010) ("[V]iolations of state law are not cognizable on federal habeas review.")  However, it is clear in this instance Petitioner is not merely raising a claim of state law error nor simply attempting to "transform" a state law issue into a federal one by asserting a violation of due process.  Instead, Petitioner clearly asserts the instructional error in his case violated his federal constitutional rights to due process, a fair trial, and to present a

complete defense.  (See ECF No. 1-2 at 21-22.)  Such a claim, which clearly implicates federal constitutional guarantees, is cognizable on federal habeas corpus.

In evaluating a claim of instructional error on federal habeas review such as those presented here, a reviewing court is tasked with determining "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  McGuire, 502 U.S. at 72, quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973). "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." McGuire, 502 U.S. at 72, quoting Cupp, 414 U.S. at 147.  Even if Petitioner is able to show federal constitutional error occurred, habeas relief is only available as to such a claim if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

While the trial court instructed the jurors with CALCRIM 3471 as to self-defense in the case of mutual combat or initiating a fight when a defendant withdrew from the fight, Petitioner contends the trial court erred in failing to also instruct the jurors with the bracketed portion of the instruction providing an individual using non-deadly force regained the right of self-defense if his opponent responded with sudden and deadly force and "[b]y failing to instruct on this applicable principle, the court provided the jury an incorrect statement of the law and deprived Gonzalez of his claim of self-defense, perfect or imperfect, when he shot Crook."  (ECF No. 1-2 at 10.)

As an initial matter, the record reflects defense counsel did not request this portion of the instruction nor object to the trial court's stated indication not to give it.  During the trial court and counsels' discussion of proposed jury instructions, the trial court specifically indicated it would not provide the bracketed portion of CALCRIM 3471, to which Petitioner's defense counsel simply replied: "I'll submit."  (Reporter's Transcript ["RT"] 1367-68, ECF No. 13-13, Lodgment No. 14.)  In any event, even had counsel requested the omitted portion, Petitioner fails to demonstrate the evidence at trial supported, much less required, giving the contested instruction.

While there was testimony and other evidence Crook had been consuming, and was walking around with, a shrimp cocktail glass earlier that afternoon (see e.g. RT 532-34, 661-63, 807, 1056), there was no evidence Crook still had that or any glass in his hand at the time the initial fight broke out nor later when he approached Petitioner, such that he could have been viewed as wielding a deadly weapon.  Instead, Juan Carlos Lopez initially testified he did not see anything in Crook's hands when Crook approached Petitioner; Lopez later acknowledged the surveillance video showed Crook put something down and pick it up prior to running down the street.  (RT 410, 433, 454.)  Lujan testified that he saw Petitioner get into position to shoot Eddie Lopez and saw Crook approach Petitioner with nothing in his hands.  (RT 720-27.)

Petitioner argues "there was substantial evidence from which jurors could have reasonably found that Tijuana/Chula Vista were the aggressors in the physical fight, however, the National City group counter-assaulted with a group assault with deadly weapons whereby Gonzalez's forfeited right to defense was regained," and specifically, "with Gonzalez's right to self-defense no longer forfeited, he had the right to defend with deadly force whether perfect or imperfect against Crook's subsequent attack or apparent attack upon Gonzalez and/or Gonzalez and Roldan." (ECF No. 1-2 at 11, 17.)  To this end, Petitioner asserts "[t]he fact that the prosecutor sought to prove the object that Crook had in his hands was a plastic cup is not dispositive since evidence discussed above supported the reasonable inference that Crook snatched and grabbed a beer glass or shrimp cocktail goblet from the flatbed truck before running hurriedly south down the sidewalk." (Id. at 18.)  However, the California Court of Appeal clearly and definitively rejected Petitioner's contended interpretation of the facts.  As the state court reasonably found after a thorough factual analysis, the evidence at trial failed to support a possible finding Crook was holding a heavy glass object when he approached Petitioner.  The state appellate court specifically concluded: "our independent review of the video recording and still photographs therefrom confirms that the object that Crook placed on the flatbed truck and later picked up before heading southward could not reasonably be found to be one of the restaurant's shrimp

14

cocktail glasses." (ECF No. 5-7 at 40.) The state court also found and concluded: "We likewise reject Gonzalez's alternative argument that there is substantial evidence to support a finding the object possibly held by Crook, if not a shrimp cocktail glass, was instead a beer glass with a 'waist' in its middle or other similarly shaped goblet or container made of glass and not a plastic michelada cup with straight sides," stating their review of the evidence "is inconsistent with such a finding and instead supports a finding only that the object was a plastic michelada cup, which could not have posed to Gonzalez any real or perceived threat of imminent danger of death or great bodily injury." (ECF No. 5-7 at 41.) In the absence of evidence in rebuttal, this Court must presume those factual findings are correct. See Collins, 546 U.S. at 338-39 ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"), quoting 28 U.S.C. § 2254(e)(1).

Petitioner does not attempt to rebut this presumption, but instead simply argues the evidence also supports a reasonable inference Crook had some sort of glass in his hand when he approached Petitioner and the prosecution's argument at trial the object was plastic "is not dispositive." (ECF No. 1-2 at 18.) On habeas review, the trial prosecutor's argument is beside the point as this Court must look to the reasonableness of the state court factual findings. In the absence of any showing in rebuttal by Petitioner, much less "clear and convincing evidence" rebutting the correctness of those findings, see 28 U.S.C. § 2254(e)(1), this Court must presume the state court factual findings the "the object was a plastic michelada cup" and Crook held neither a beer glass nor a shrimp cocktail glass (see ECF No. 5-7 at 40-41), are correct.

Petitioner additionally asserts "[t]he state court erred when it unreasonably focused on whether the object in Crook's hand was actually plastic or glass when substantial evidence supported finding that Mr. Gonzalez regained the right to self-defense when numerous opponents suddenly escalated the encounter with deadly force." (ECF No. 14 at 6.) Yet, in contending a "group" of individuals "armed with deadly weapons" pursued members of Petitioner's group, Petitioner cites only to the supposedly "glass object" held

by Crook, the beer bottle Eddie Lopez stated he threw at the Gutierrez brothers, and evidence Roldan was hit on the head by some sort of object.  (Id. at 5-6.)  Again, the state court firmly rejected a finding Crook was holding something other than a plastic cup, and Petitioner also fails to persuasively show the beer bottle or object thrown at Roldan (by Eddie Lopez) amounted to deadly force sufficient to amount to a threat of imminent great bodily injury or death such that self-defense would be warranted against Crook.  Moreover, Enrique Chavez testified he did not see glass around the area where Crook was standing on the sidewalk after the shooting, nor any drinking glasses or cups. (RT 327.)  Petitioner's argument fails to find support in the record, and the Court remains unpersuaded the state court unreasonably focused on the object Crook held rather than the group melee, as the evidence reflects it was solely Crook who approached Petitioner, who then shot and killed Crook.   Given the victim Crook was the only individual identified as approaching Petitioner, it is unclear how other members of Crook's "group" pursuing other members of Petitioner's "group" would have warranted much less required the trial court provide the omitted bracketed portion of the contested instruction, which directed in relevant part a defendant could regain the right to self-defense when initially employing non-deadly force in a situation where the "opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight."  See CALCRIM 3471.  On this record, the Court finds no factual support to compel providing the contested instruction, much less any support for the conclusion its omission resulted in prejudice.  See Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) ("'An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law' and, thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an 'especially heavy burden.'"), quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

Petitioner correctly notes "a 'criminal defendant is entitled to adequate instructions on the defense theory of the case' if supported by the law and evidence," and the "Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  (ECF No. 1-2 at 12-13, quoting Conde v. Henry, 198 F.3d 734, 739

(9th Cir. 1999) and <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986).)  "It is well-settled that a criminal defendant is entitled to a jury instruction 'on any defense which provides a legal defense to the charge against him and which has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.'" <u>United States v. Sotelo-Murilo</u>, 887 F.2d 176, 178 (9th Cir. 1989), quoting <u>United States v. Yarbrough,</u> 852 F.2d 1522, 1541 (9th Cir. 1988); <u>see</u> <u>also</u> <u>Beardslee v. Woodford</u>, 358 F.3d 560, 577 (9th Cir. 2004) ("Failure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable."), citing <u>United States v. Scott</u>, 789 F.2d 795 (9th Cir. 1986).  However, in this instance the record fails to support an argument Petitioner actually believed either he or a member of his "group" was in imminent danger of death or great bodily harm from Crook. As Petitioner fails to demonstrate this self-defense theory had "'some foundation in the evidence,'" given the state court's clear and unrebutted factual finding the evidence presented did not support a conclusion Crook was armed with either a glass object or cocktail glass as Petitioner contends but instead was holding a plastic cup, the Court cannot conclude the contested instruction was warranted.  <u>Sotelo-Murilo</u>, 887 F.2d at 178, quoting <u>Yarbrough,</u> 852 F.2d at 1541.  Again, the defense neither requested this instruction nor objected to the trial court's indication it wouldn't instruct the jury with the bracketed portion at issue.  (<u>See</u> RT 1367-68) (when trial court indicated it would not instruct the jury with bracketed portion of CALCRIM 3471, Petitioner's defense counsel replied: "I'll submit.")

Here, it is clear there was no error in the trial court's decision not to instruct the jurors Petitioner regained his right to self-defense if he used non-deadly force and Crook responded with deadly force against him preventing withdrawal and allowing for the use of deadly force to defend himself given the lack of evidence supporting such an instruction. Based on a review of the jury instructions as a whole and the trial record, the Court cannot conclude CALCRIM 3471 as given "so infected the entire trial that the resulting conviction violates due process."  <u>McGuire</u>, 502 U.S. at 72, quoting <u>Cupp</u>, 414 U.S. at 147.

Additionally, Petitioner fails to demonstrate that any such alleged error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

In addition to clearly failing on the merits, Petitioner also fails to demonstrate the state court rejection of Claim One was contrary to or an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. Richter, 562 U.S. at 97-98.  Accordingly, habeas relief is not available on Claim One.

### 2. **Claim Two**

In Claim Two, Petitioner asserts the trial court erred in failing to instruct the jury that a defendant who provokes a fight regains his right to self-defense when the opponent's use of force is not legally justified, violating the same federal constitutional rights alleged in Claim One.  (ECF No. 1 at 7; ECF No. 1-2 at 25-27.)  As with the prior claim, Respondent maintains Claim Two "fails to state a federal question," and "[i]n any event, the state appellate court's rejection of these claims was reasonable." (ECF No. 12-1 at 14.)

The Court again looks through the state supreme court's silent denial to the opinion issued by the state appellate court, which rejected this claim in a reasoned decision as follows:

> Gonzalez contends the trial court erred by instructing with CALCRIM No. 3472 but not modifying it with language stating that a person who provokes a fight with an intent to use nondeadly force regains the right to self-defense when his or her opponent counters with deadly force.
>
> A
>
> Per the prosecution's request, the trial court instructed with CALCRIM No. 3472, without modification, as follows: "A person does not have the right to self-defense if he provokes a fight or quarrel with the intent to create an excuse to use force."  Gonzalez did not object to that instruction.
>
> B
>
> As discussed *ante*, "even in the absence of a request, a trial court must instruct on general principles of law that are commonly or closely and openly

connected to the facts before the court and that are necessary for the jury's understanding of the case. (Citations.)   The trial court is charged with instructing upon every theory of the case supported by substantial evidence, including defenses that are not inconsistent with the defendant's theory of the case. (Citations.)" (*Montoya*, *supra*, 7 Cal.4th at p. 1047.)   Evidence is substantial only if a reasonable jury could find it persuasive. (*Young*, *supra*, 34 Cal.4th at p. 1200.)

C

Gonzalez argues the trial court erred by instructing with CALCRIM No. 3472, as quoted *ante*, without modifying it to include language permitting him to use perfect or imperfect self-defense if he initially used nondeadly force and Crook responded with deadly force.  Alternatively stated, he argues the court should have modified CALCRIM No. 3472 to state those defenses are not available if he provoked the fight and created the circumstances that legally justified Crook's use of force. (Cf. *People v. Enraca* (2012) 53 Cal.4th 735, 761; *People v. Ramirez* (2015) 233 Cal.App.4th 940, 947-952; *People v. Frandsen* (2011) 196 Cal.App.4th 266, 272; *People v. Vasquez* (2006) 136 Cal.App.4th 1176, 1179-1180.)

However, as with CALCRIM No. 3471 discussed *ante*, we conclude the trial court did not err by omitting language modifying CALCRIM No. 3472 to allow for Gonzalez's possible perfect or imperfect self-defense if he provoked a fight with nondeadly force and Crook responded with deadly force (i.e., Gonzalez then regained the right to perfect or imperfect self-defense), because substantial evidence does not support a finding that Crook responded, or appeared to Gonzalez to respond, with deadly force.  As we discussed in part V(C) *ante*, there is insufficient evidence to support a finding that Crook was holding, or appeared to be holding, a heavy shrimp cocktail glass, glass goblet, or other object that appeared to be made of glass when he approached Gonzalez from behind and tapped him on the shoulder.  Absent substantial evidence supporting such a finding, there was insufficient evidence to support a finding Gonzalez actually believed Crook posed an imminent danger of death or great bodily injury to him or others (i.e., used, or appeared to use, deadly force) that would justify Gonzalez's perfect or imperfect self-defense by shooting Crook.  Accordingly, we conclude the trial court did not err by instructing with CALCRIM No. 3472 but not modifying it with language stating that a person who provokes a fight with an intent to use nondeadly force regains the right to perfect or imperfect self-defense when his or her opponent counters with deadly force. (*Montoya*, *supra*, 7 Cal.4th at p. 1047.)

19

1
2
3
4
5
6
7
8

Alternatively stated, the court did not err in instructing the jury with an unmodified version of CALCRIM No. 3472 in the circumstances of this case.[17]

> [17] Assuming arguendo the trial court erred by giving CALCRIM No. 3472 or not modifying its language as Gonzalez asserts, "the error is merely technical and not grounds for reversal" (*People v. Eulian* (2016) 247 Cal.App.4th 1324, 1335) because, based on the evidence in this case, the jury necessarily would not have found Crook approached, or appeared to approach, Gonzalez with a deadly weapon (i.e., glass object).

9

(ECF No. 5-7 at 42-44.)

10
11
12
13
14
15
16
17
18
19

With respect to Respondent's assertion Claim Two "fails to state a federal question" (ECF No. 12-1 at 14), the Court agrees claims of error in the application of state law are generally not cognizable on federal habeas review, see McGuire, 502 U.S. at 67-68, but because Petitioner clearly contends this instructional error violated his federal constitutional rights to due process, a fair trial and to present a complete defense, (see ECF No. 1-2 at 27), Claim Two is federally cognizable.  As such, the Court must decide "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Id. at 72, quoting Cupp, 414 U.S. at 147.  Again, habeas relief is only available for such a claim if the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

20
21
22
23
24
25
26
27
28

Here, Petitioner contends "the trial court provided the jury an incorrect statement of the law when it instructed under CALCRIM No. 3472 that without exception and categorically 'A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force.'" (ECF No. 1-2 at 25.)  Petitioner asserts "[t]he court prejudicially erred by failing to instruct that a defendant who provokes a fight with excuse to use non-deadly force regains his right to self-defense when the opponent's use of force is not legally justified, thereby depriving [petitioner] of due process" and "[e]vidence was produced at trial to support the requested jury instruction on self-defense." (ECF No. 1 at 7.)  Again, clearly established law directs that the import of

20

CALCRIM No. 3472 cannot be determined "in artificial isolation," but instead the instruction "must be considered in the context of the instructions as a whole and the trial record." McGuire, 502 U.S. at 72, quoting Cupp, 414 U.S. at 147.

As an initial matter and contrary to Petitioner's contention, the record does not reflect the trial court declined to give this "requested" jury instruction on self-defense. During the discussion on jury instructions, the trial court indicated it felt giving the last paragraph of CALCRIM 3472 was "appropriate, but I will listen if somebody disagrees," to which the prosecutor stated: "I believe it's appropriate.  The jury could decide there was a full fight," and the trial court replied: "Yeah. All right.  I will give 3472."  (RT 1368.) The record fails to reflect a defense objection to this instruction nor any defense request for modification.  (See RT 1367-68, 1528.)

Moreover, Petitioner premises Claim Two on the same facts as those asserted in Claim One, namely that he had a right to self-defense when Crook ostensibly and unjustifiably attacked with a glass object or cocktail glass.  (See ECF No. 1-2 at 26-27.) Yet, as discussed above, the state court firmly rejected Petitioner's contended interpretation of the facts.  As the state court reasonably found after detailed analysis and discussion, the evidence at trial failed to support a finding Crook was holding a heavy glass object when he approached Petitioner and tapped him on the shoulder.  The state appellate court referred its findings with respect to the Claim One allegations concerning CALCRIM 3471 and again stated "there is insufficient evidence to support a finding that Crook was holding, or appeared to be holding, a heavy shrimp cocktail glass, glass goblet, or other object that appeared to be made of glass when he approached Gonzalez from behind and tapped him on the shoulder," and concluded: "Absent substantial evidence supporting such a finding, there was insufficient evidence to support a finding Gonzalez actually believed Crook posed an imminent danger of death or great bodily injury to him or others (i.e., used, or appeared to use, deadly force) that would justify Gonzalez's perfect or imperfect self-defense by shooting Crook."  (ECF No. 5-7 at 43-44.)  Again, this Court must presume the state court factual findings are correct.  See Rice, 546 U.S. at 338-39 ("State-court factual

findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"), quoting 28 U.S.C. § 2254(e)(1).  As with Claim One, in the absence of any showing otherwise, much less "clear and convincing evidence" in rebuttal, see 28 U.S.C. § 2254(e)(1), this Court must presume the state court factual findings Crook held neither a beer glass nor a shrimp cocktail glass and "the object was a plastic michelada cup" (see ECF No. 5-7 at 40-41), are correct.

Here, Petitioner cites state and federal authority and rests on "the same reasons" discussed in Claim One to contend "the trial court erred by failing on a correct statement of the law appropriate to the circumstances when it instructed that without exception '(a) person does not have the right to self-defense if he provokes a fight or quarrel with the intent to create an excuse to use force' also thereby effectively deprived Gonzalez of his claim of self-defense, perfect and/or imperfect in violation of his right to due process and his right to present an adequate defense" and such error "was not harmless." (ECF No. 1-2 at 27.)  However, as this Court previously concluded with respect to Petitioner's factually similar Claim One contention, on this record, the facts do not compel providing the contested portion of the CALCRIM 3472 instruction nor is there any support for the conclusion its omission resulted in prejudice.  See Villafuerte, 111 F.3d at 624 ("'An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law' and, thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an 'especially heavy burden.'"), quoting Kibbe, 431 U.S. at 155.

Based on the Court's review of the jury instructions as a whole and the state record, the Court cannot conclude CALCRIM 3472 as given "so infected the entire trial that the resulting conviction violates due process." McGuire, 502 U.S. at 72, quoting Cupp, 414 U.S. at 147.  Petitioner additionally fails to demonstrate the asserted error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637.

In addition to failing on the merits, Petitioner also fails to demonstrate the state court rejection of Claim Two was contrary to or an unreasonable application of clearly

established federal law or that it was based on an unreasonable determination of the facts. Richter, 562 U.S. at 97-98.  Accordingly, habeas relief is not available on Claim Two.

### 3. **Claim Three**

In Claim Three, Petitioner contends the trial court erred in admitting unduly prejudicial, unsanitized and highly inflammatory testimony by Juan Carlos Lopez regarding threats alleged made to him by Petitioner, violating Petitioner's due process rights.  (ECF No. 1 at 8; ECF No. 1-2 at 28-37.)  Similar to the prior claims, Respondent maintains Claim Three "fails to state a federal question," and "[i]n any event, the state appellate court's rejection of this claim was reasonable."  (ECF No. 12-1 at 15.)

The Court again looks through the state supreme court's silent denial to the opinion issued by the state appellate court, which rejected this claim in a reasoned decision as follows:

> Gonzalez contends the trial court abused its discretion under Evidence Code section 352 by admitting the testimony of Juan Carlos Lopez regarding the death threat he (Gonzalez) made to dissuade him from testifying at trial and also abused its discretion by denying his motion for mistrial based on admission of that evidence.
>
> A
>
> In the course of discussing the parties' pretrial in limine motions, Gonzalez's counsel raised the issue of a report disclosed by the prosecution regarding its investigator's interview of Julio Martinez in which he (Martinez) stated that while he was in jail with Gonzalez, Gonzalez asked him to convey to Juan Carlos Lopez a threat to not come to court and indicated he knew his (Juan Carlos Lopez's) family.  Gonzalez's counsel asked the trial court to preclude the prosecution from presenting Martinez's testimony.  The prosecutor stated she intended to offer Martinez's testimony as relevant to Gonzalez's consciousness of guilt based on his attempt to dissuade Juan Carlos Lopez from testifying.  She made an offer of proof regarding Martinez's expected testimony, stating:
>
> "(W)hat happened is (Martinez) was in custody with Mr. Gonzalez April 16th or 20th(, 2015), the last time we were here. . . .

23

"And what (Martinez) says is he and Mr. Gonzalez were chitchatting and it came about that they realized they both knew Juan Carlos Lopez.

"At that time, Mr. Gonzalez told (Martinez) that could he get in touch with Mr. Lopez and basically tell him not to come to court, that he knew where he lived and where his children went to school and so forth, and then reiterated that he better not come to court and testify. He also referenced that Mr. Lopez had already testified at (his) preliminary hearing.

"(Martinez) got out of custody within about 48 hours of that conversation and immediately contacted Mr. Lopez and Mr. Lopez's cousin, who he is married to. And Mr. Lopez received a couple of text messages. Mr. Lopez called (Martinez) back and (Martinez) relayed the conversation he had with Mr. Gonzalez."

The trial court tentatively ruled Martinez could testify, subject to a further objection.

In her direct examination of Juan Carlos Lopez, the prosecutor asked him whether he was nervous about testifying. He replied, "Yes." She asked him whether he had discomfort with talking to police and coming to court to testify regarding the incident. He replied, "Yes." When she asked why he had such discomfort, Gonzalez's counsel objected on grounds of relevancy.

At a sidebar conference outside of the jury's presence, Gonzalez's counsel stated he did not know "exactly what (Juan Carlos Lopez) is going to say. There were a lot of threats going back and forth . . . . He could say something so highly prejudicial and inflammatory that would result in a mistrial." The prosecutor made an offer of proof regarding how Juan Carlos Lopez was expected to testify, stating: "(He) feels discomfort from both sides. He's expressed to police, I think in prior statements and certainly to me, that he feels pressure from the neighborhood, because everybody feels like since he's the person that knows everybody that he should be the one to provide information on the one hand. On the other hand, *he feels threatened by Mr. Gonzalez because of that phone call that we discussed earlier in our motions in limine.* So I think he is going to express that he feels like he's getting it from all sides." (Italics added.) Gonzalez's counsel restated he did not know what Juan Carlos Lopez was going to say.

24

The trial court stated:

"I don't know how to do (an Evidence Code section) 402 (hearing) on a witness. . . . I think it all comes in. . . . (I)t is my understanding that Mr. Gonzalez didn't directly talk to him, and so if he felt pressure, it wasn't directly from Mr. Gonzalez. . . . (R)ight now it is not like he is going to say he heard it from Mr. Gonzalez."

The prosecutor stated that Juan Carlos Lopez had expressed fear of Gonzalez as a result of the threat that Martinez told him about. She stated: "His boy, oldest boy goes to school with Mr. Gonzalez'(s) eldest daughter, and unbeknownst to him they are very good friends . . . ." Both Gonzalez's counsel and Chavez's counsel submitted on the matter, stating they needed to cross-examine Juan Carlos Lopez to show he was pressured to come up with a story. The court implicitly ruled the prosecutor could question Juan Carlos Lopez on the specifics of his discomfort in testifying.

In the presence of the jury, the prosecutor continued her questioning of Juan Carlo Lopez as follows:

"Q. Mr. Lopez, we were talking a bit about your discomfort in testifying. . . . Would you prefer not to testify here in court today?

"A. Yes.

"Q. And is it fair to say you're here because we subpoenaed you?

"A. Correct.

"Q. Why would you prefer not to testify?

"A. Most recently, the death threats.

"Q. Do you fear for your safety?

"A. Yes.

"Q. And that of your family?

"A. More my family than mine.

19-cv-2326 GPC (WVG)

"Q. And you said, 'most recently.'  At the beginning or onset of this case, did you have different concerns?

"A. Similar.  I felt like it was coming—I don't know where it was coming from.

"Q. Fears for your safety?

"A. Correct.

"Q. Did you feel pressure from the neighborhood?

"A. Yes.

"Q. You mentioned there was a recent threat; is that right?

"A. Correct.

"Q. And was it a threat in regards to testifying?

"A. Yes.  (¶) . . . (¶)

"Q. Did you receive a message urging you not to testify?

"A. Yes.

"Q. Who gave you that message?

"A. A gentleman by the name of Julio.

"Q. And how do you know Julio?

"A. I've known him for quite some time. He's related to my brother's wife.  (¶) . . . (¶)

"Q. Did he tell you the content of that threat?

"A. Yes.

"Q. What did he tell you?

"(Gonzalez's counsel:) Objection, your honor. I call(s) for hearsay.

"THE COURT: And, ladies and gentlemen, I'm going to allow this information in . . . for a limited purpose.  It is not for the truth of really what was said.  It is for the impact on the person that heard it.  Whether the words were true or not, this is just for how Mr. Lopez reacted.  (¶)  So go ahead.  (¶) . . . (¶)

"Q (by the prosecutor). What did he tell you?

"A. He told me that he had recently got a DUI and he was incarcerated.  And while incarcerated he was . . . housed or in the same cell as Mr. Gonzalez.  And Mr. Gonzalez somehow through their conversation came up why one or the other was inside or incarcerated, and it came out that Julio knew me.   And (Gonzalez) said, do me a favor.  When you get out, make sure you tell him not to testify or I'm going to kill his family and him.

"Q. What effect did this have on you?

"A. On me, personally, I have to use whatever resources I have to protect my family.  (¶)  On my family, it's taken a toll.

"Q. Has it caused worry and concern for you?

"A. Yes.

"Q. And worry and concern for you specifically about testifying?

"A. Correct."

The prosecutor then questioned Juan Carlos Lopez about the restaurant's surveillance camera and the instant incident.

During a recess in the jury's absence, the trial court discussed with counsel Juan Carlos Lopez's testimony and stated: "I have to say that . . . I shouldn't have been surprised by the detail with which Mr. Lopez gave the conversation he had with his friend, but part of my ruling, besides what we already have on the record, was in anticipation that the person who actually

made the call that was in the cell (i.e., Martinez) was going to come in and testify in detail, which is I think we had a conversation before (the) trial started, so that (Gonzalez's counsel) would have an opportunity to cross-examine him on any conversation with Mr. Gonzalez."  Gonzalez's counsel stated:

> "I never imagined for a second that a hearsay statement of that nature, which can't be sanitized under any circumstances, because the prejudicial effect is so overwhelming, the probative value can certainly be minimized by the fact that he could say he got a threat not to testify and then, of course, (Martinez) can come in and talk about it and perhaps lay a better foundation. But . . . it has such an explosive and prejudicial value to my client.  It is clearly a hearsay statement.  There are other methods by which he could indicate what his state of mind was, but not something as explosive as that."

Based on those concerns, Gonzalez's counsel moved for a mistrial.  The court took the motion under submission and suggested that Gonzalez's counsel could file a written motion.

Gonzalez's counsel subsequently filed a written motion for mistrial, arguing Juan Carlos Lopez's testimony regarding Gonzalez's death threat was inadmissible hearsay and, in particular, should not have been admitted as relevant to Juan Carlos Lopez's then-existing state of mind.  He also argued the trial court abused its discretion under Evidence Code section 352 by admitting that testimony without an adequate limiting instruction and, in any event, no admonition or instruction to the jury could have cured the prejudice caused by Juan Carlos Lopez's testimony.  Accordingly, he argued Gonzalez was denied his constitutional right to a fair trial.

The prosecutor opposed the mistrial motion, arguing Juan Carlos Lopez's testimony (and Martinez's follow-up testimony) was highly relevant to his credibility because of his inconsistent statements about the incident and the shooter's identity, his initial denial that the video recording existed, his possible edits to that recording, and his change in demeanor when asked on direct examination who the shooter was.

The trial court denied Gonzalez's motion for mistrial, stating that Juan Carlos Lopez's testimony was relevant to his credibility and to explain his "strong physical reaction" when on direct examination he identified Gonzalez

19-cv-2326 GPC (WVG)

as the shooter. The court acknowledged that when Juan Carlos Lopez testified about the details of Gonzalez's threat, the court was not anticipating that testimony but nevertheless knew about that threat because it was discussed before trial. The court referred to its admonition or limiting instruction and also stated Juan Carlos Lopez's testimony about Gonzalez's threat was not so prejudicial as to warrant a mistrial because Martinez was expected to testify regarding that threat anyway.

The prosecution subsequently presented testimony by Martinez regarding the details of the death threat that Gonzalez asked him to, and he (Martinez) did, convey to Juan Carlos Lopez. In particular, Martinez testified that while they were in custody together, Gonzalez asked him to relay a message to Juan Carlos Lopez to not show up in court and that he (Juan Carlos Lopez) was being a "snitch." Gonzalez told Martinez he knew Juan Carlos Lopez's family, knew where they lived, and where Juan Carlos Lopez's children went to high school, specifying it by name. Gonzalez stated he "didn't want to kill them," so Juan Carlos Lopez should not come to court. Martinez later conveyed Gonzalez's threat to Juan Carlos Lopez.

B

Gonzalez asserts the trial court abused its discretion under Evidence Code section 352 when it admitted the testimony of Juan Carlos Lopez regarding Gonzalez's death threat. In particular, he argues the court failed to exercise its discretion under Evidence Code section 352 and, in any event, no reasonable judge would have admitted that testimony without sanitizing its undue prejudicial effect. He argues the court's error violated his constitutional rights to due process and a fair trial, requiring reversal of his convictions.

Evidence Code section 352 provides that a "court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . (b) create substantial danger of undue prejudice, of confusing the issues, or misleading the jury." The term "prejudice," within the meaning of Evidence Code section 352, is not simply damage to the defense that naturally flows from relevant and highly probative evidence, but is instead an emotional reaction that inflames the jurors' emotions, motivating them to have a bias against, or to prejudge, an individual based on evidence that has only slight probative value on the issues. (*People v. Valdez* (2012) 55 Cal.4th 82, 145; *People v. Samuels* (2005) 36 Cal.4th 96, 124; *People v. Cole* (2004) 33 Cal.4th 1158, 1197; *People v. Zapien* (1993) 4 Cal.4th 929, 958.) Under that statute, evidence is substantially more prejudicial than probative if it poses an intolerable risk to the fairness of the proceedings or the reliability of the outcome and renders the defendant's trial

fundamentally unfair.  (*People v. Jablonski* (2006) 37 Cal.4th 774, 805.)
Under Evidence Code section 352, a trial court need not expressly weigh the
prejudicial effect of evidence against its probative value or even expressly
state it has done so.  (*People v. Williams* (1997) 16 Cal.4th 153, 213
(*Williams*).)  Nevertheless, the record must show the trial court understood
and fulfilled its responsibilities under that statute.  (*Ibid.*)

On appeal, we apply the abuse of discretion standard in reviewing a
trial court's ruling on the admissibility of evidence, including an Evidence
Code section 352 objection to evidence.  (*People v. Cox* (2003) 30 Cal.4th
916, 955.)  We will reverse a trial court's ruling only if the record shows the
court acted in an arbitrary, capricious, or patently absurd manner that resulted
in a manifest miscarriage of justice. (*People v. Williams* (2008) 43 Cal.4th
584, 634-635; *People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Based on our review of the record, we conclude the trial court did not
abuse its discretion under Evidence Code section 352 by admitting Juan
Carlos Lopez's testimony regarding Gonzalez's threat and giving its limiting
instruction on that testimony.  First, we reject Gonzalez's assertion that the
court was uninformed and therefore could not, and did not, weigh the possible
prejudicial effect of that testimony against its probative value under Evidence
Code section 352.  At the sidebar conference on Gonzalez's objection to Juan
Carlos Lopez's testimony on why he was uncomfortable testifying in court,
his counsel stated he did not know "exactly what (Juan Carlos Lopez) is going
to say.  There were a lot of threats going back and forth . . . . He could say
something so highly prejudicial and inflammatory that would result in a
mistrial."  In so doing, he implicitly raised the issue of whether Juan Carlos
Lopez's testimony would be unduly prejudicial under Evidence Code section
352 and objected to that testimony on that ground.  The prosecutor then made
an offer of proof that Juan Carlos Lopez was expected to testify, inter alia,
regarding Gonzalez's threat against him that was conveyed by Martinez, who
also was expected to testify regarding that threat as discussed before trial and
whose testimony was tentatively ruled as admissible by the court.[18]  The court
implicitly ruled the prosecutor could question Juan Carlos Lopez on the
specifics of his discomfort in testifying, including Gonzalez's threat.  In so
doing, the court implicitly overruled Gonzalez's Evidence Code section 352
objection to Juan Carlos Lopez's expected testimony, including his testimony
regarding Gonzalez's threat, presumably weighing the probative value of that
expected testimony against its potential prejudicial effect and finding it was
not unduly prejudicial. (*Williams*, *supra*, 16 Cal.4th at p. 213 ("(W)hen ruling
on (an Evidence Code) section 352 motion, a trial court need not expressly

weigh prejudice against probative value, or even expressly state it has done so.").)

> [18] The prosecutor stated, inter alia, that she expected Juan Carlos Lopez to testify that he "feels threatened by Mr. Gonzalez because of that phone call that we discussed earlier in our motions in limine (referring to Martinez's expected testimony regarding Gonzalez's threat)."

Contrary to Gonzalez's assertion, there is no affirmative evidence in the record showing the court was either unaware of its discretion under Evidence Code section 352 to exclude that testimony or did not exercise that discretion. Rather, the record shows the court understood and fulfilled its responsibilities under Evidence Code section 352. (*Williams*, *supra*, 16 Cal.4th at p. 213.) To the extent Gonzalez asserts the trial court did not exercise its Evidence Code section 352 discretion because it failed to conduct an Evidence Code section 402 hearing on the expected testimony of Juan Carlos Lopez and therefore lacked "informed" discretion, we disagree.  Gonzalez does not cite any authority showing a court must conduct an Evidence Code section 402 hearing before it may exercise "informed" discretion under Evidence Code section 352 and admit certain potentially prejudicial testimony.  Furthermore, although Gonzalez refers to the court's comment that it "did not know how" to conduct an Evidence Code section 402 hearing on a witness's expected testimony, we presume the court was experienced in conducting Evidence Code section 402 hearings generally and therefore would have been able to conduct an appropriate Evidence Code section 402 hearing regarding the admissibility of Juan Carlos Lopez's expected testimony on Gonzalez's threat had Gonzalez's counsel requested one and/or had the court deemed such a hearing necessary or appropriate for it to exercise its Evidence Code section 352 discretion.  In any event, the record supports an inference that the court found such a hearing was unnecessary, given the prosecutor's subsequent offer of proof that summarized Juan Carlos Lopez's expected testimony on Gonzalez's threat and other reasons for being uncomfortable with testifying in court, and exercised its Evidence Code section 352 discretion to admit that testimony.  Although his testimony ultimately was in greater detail than that described by the prosecutor, the court nevertheless exercised its discretion by admitting that testimony.

Second, we reject Gonzalez's assertion that the trial court abused its Evidence Code section 352 discretion by admitting Juan Carlos Lopez's testimony regarding his (Gonzalez's) threat.  The court could have found Juan

Carlos Lopez's expected testimony was highly relevant to his state of mind and credibility regarding his description of the incident and identification of Gonzalez as the shooter.  Evidence of threats against a witness or fears of retaliation for testifying is relevant to the witness's credibility.  (*People v. Guerra* (2006) 37 Cal.4th 1067, 1142 ("evidence that (witness) feared retaliation for testifying against defendant was (properly) offered for the nonhearsay purpose of explaining inconsistencies in portions of her testimony"); *People v. Burgener* (2003) 29 Cal.4th 833, 869 ("Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible. (Citations.) An explanation of the basis for the witness's fear is likewise relevant to her credibility and is well within the discretion of the trial court.").)  In light of the inconsistencies in Juan Carlos Lopez's previous statements and possible involvement in hiding and/or editing the surveillance camera video recording and his distressed appearance while identifying Gonzalez in court as the shooter, the court reasonably concluded his testimony regarding the threat from Gonzalez was highly relevant to his state of mind and credibility.

The court could also have found any prejudice from that expected testimony would not be undue because the prosecutor planned to present similar testimony by Martinez regarding Gonzalez's threat, as discussed before trial.  Contrary to Gonzalez's assertion, the expected testimony by Martinez regarding the threat did not necessarily make Juan Carlos Lopez's testimony regarding that threat unduly cumulative such that the court abused its discretion by admitting it.  In particular, Juan Carlos Lopez's testimony was distinctly relevant to show his state of mind and credibility, whereas Martinez's testimony was relevant to Gonzalez's consciousness of guilt as well as providing evidentiary support for Juan Carlos Lopez's testimony regarding Gonzalez's threat.

Furthermore, the trial court could have concluded any prejudice from the admission of Juan Carlos Lopez's testimony regarding Gonzalez's threat could be minimized by a limiting instruction or admonition.  Weighing the highly probative value of the expected testimony of Juan Carlos Lopez regarding Gonzalez's threat against its potential prejudicial effect, the court could reasonably conclude that expected testimony was not unduly prejudicial under Evidence Code section 352 and allow him to testify regarding Gonzalez's threat.  In so doing, we conclude the court did not abuse its discretion under Evidence Code section 352.  To the extent Gonzalez argues the court should have "sanitized" Juan Carlos Lopez's testimony by limiting the details of the nature or extent of Gonzalez's threat or otherwise, we are

not persuaded the court was required to do so in the circumstances of this case and the cases Gonzalez cites do not hold a trial court errs if it does not do so. (Cf. *People v. Mendoza* (2011) 52 Cal.4th 1056, 1083-1087 (trial court did not abuse its discretion by limiting witness's testimony regarding threat to reduce its possible prejudicial effect); *People v. Wharton* (1991) 53 Cal.3d 522, 597-598 (trial court did not abuse its discretion by limiting witness's testimony to prosecution's offer of proof).)

Assuming arguendo the trial court abused its discretion under Evidence Code section 352 by allowing Juan Carlos Lopez to testify regarding Gonzalez's threat, we nevertheless would conclude that error was not prejudicial. First, immediately after Juan Carlos Lopez began testifying about Gonzalez's threat in greater detail than the court expected, the court gave a limiting instruction to minimize any possible prejudicial effect. The court admonished the jury: "I'm going to allow this information in . . . for a limited purpose. It is not for the truth of really what was said. It is for the impact on the person that heard it. Whether the words were true or not, this is just for how Mr. Lopez reacted." Absent affirmative evidence in the record showing otherwise, we presume the jury followed the court's instruction and considered Juan Carlos Lopez's testimony regarding Gonzalez's threat only for its impact on him (i.e., his state of mind and credibility) and not for its truth (i.e., whether Gonzalez did, in fact, threaten him). (*People v. Waidla* (2000) 22 Cal.4th 690, 725.) Accordingly, we conclude the court's limiting instruction cured or minimized, if not eliminated, any possible prejudicial effect of his testimony.

Furthermore, as anticipated, Martinez subsequently testified, without objection by Gonzalez, regarding Gonzalez's threat against Juan Carlos Lopez and his family that he (Martinez) conveyed to Juan Carlos Lopez and so testified in as much, or greater, detail as did Juan Carlos Lopez. Unlike Juan Carlos Lopez's testimony regarding Gonzalez's threat, Martinez's testimony regarding that threat was admitted for the truth of the matter asserted and was relevant to show Gonzalez's consciousness of guilt. (*People v. Valdez* (2012) 55 Cal.4th 82, 135, fn. 32; *People v. Slocum* (1975) 52 Cal.App.3d 867, 887.) Therefore, even had the trial court excluded Juan Carlos Lopez's testimony about Gonzalez's threat, it is not reasonably probable Gonzalez would have obtained a more favorable verdict. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) Even under the less forgiving standard for federal constitutional error, we conclude any error in admitting Juan Carlos Lopez's testimony regarding Gonzalez's threat was harmless beyond a reasonable doubt. (*Chapman*, *supra*, 386 U.S. at p. 24.) Accordingly, contrary to

Gonzalez's assertion, any error under Evidence Code section 352 by the trial court in admitting Juan Carlos Lopez's testimony regarding his (Gonzalez's) threat does not require reversal of his convictions.

C

Gonzalez also asserts the trial court abused its discretion by denying his motion for mistrial based on the court's purported abuse of discretion in admitting Juan Carlos Lopez's testimony regarding his (Gonzalez's) threat. "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction.  (Citation.)  Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions."  (*People v. Haskett* (1982) 30 Cal.3d 841, 854.)  "A motion for a mistrial should be granted when '"a (defendant's) chances of receiving a fair trial have been irreparably damaged."'"  (*People v. Collins* (2010) 49 Cal.4th 175, 198-199 (*Collins*).)  On appeal, we apply the abuse of discretion standard in reviewing a trial court's denial of a motion for mistrial.  (*People v. Davis* (2005) 36 Cal.4th 510, 553 (*Davis*); *People v. Cox* (2003) 30 Cal.4th 916, 953.)  In denying Gonzalez's motion for a mistrial, the trial court concluded Juan Carlos Lopez's testimony regarding Gonzalez's threat was relevant to his credibility and was not so prejudicial as to warrant a mistrial because Martinez was expected to testify regarding that threat anyway and it gave an admonition or limiting instruction.  Based on our review of the record, we conclude the court did not abuse its discretion by denying Gonzalez's motion for mistrial.  (*Davis*, *supra*, 36 Cal.4th at p. 553; *Cox*, *supra*, 30 Cal.4th at p. 953.)  As we discussed *ante*, the court did not abuse its discretion under Evidence Code section 352 by admitting Juan Carlos Lopez's testimony regarding Gonzalez's threat.  Furthermore, as we discussed *ante*, assuming arguendo the court so erred, that error was not prejudicial under any standard of prejudice.  (*Watson*, *supra*, 46 Cal.2d at p. 836; *Chapman*, *supra*, 386 U.S. at p. 24.)  Contrary to Gonzalez's assertion, the admission of Juan Carlos Lopez's testimony regarding Gonzalez's threat did not result in a miscarriage of justice or deny him his constitutional right to a fair trial.  (*People v. Collins*, *supra*, 49 Cal.4th at pp. 198-199.)

(ECF No. 5-7 at 44-60.)

With respect to Respondent's contention Claim Three "fails to state a federal question" (ECF No. 12-1 at 15), the Court agrees a claim of error in the application of state law is generally not cognizable on federal habeas review.  <u>See</u> <u>McGuire</u>, 502 U.S. at 67-

34

68.   However, Petitioner clearly contends the admission of Lopez's testimony about Gonzalez's threat violated his federal constitutional rights (see ECF No. 1 at 8; ECF No. 1-2 at 28-37), and the erroneous admission of evidence may state a federal claim if the admission of such evidence rendered Petitioner's trial fundamentally unfair.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 897 (9th Cir. 1996) ("While a petitioner for federal habeas relief may not challenge the application of state evidentiary rules, he is entitled to relief if the evidentiary decision created an absence of fundamental fairness that 'fatally infected the trial.'"), quoting Kealohapauole v. Shimoda, 800 F.2d 1463, 1465 (9th Cir. 1986); see also Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991) ("Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process.")  To the extent Petitioner asserts a distinct claim of error arising from the trial court's denial of the defense motion for mistrial (see ECF No. 1-2 at 28, 30-31), such a contention presents a state law issue which is not cognizable on federal habeas review.  See McGuire, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); see also Rhoades, 611 F.3d at 1142 ("[V]iolations of state law are not cognizable on federal habeas review.")  With respect to Petitioner's claim of federal error arising from the admission of Lopez's testimony about Gonzalez's threat, even in the event Petitioner demonstrates constitutional error occurred, habeas relief is only available if such error had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637.

As the relevant section of the state court opinion discussing the facts surrounding Claim Three, reproduced above, ably and thoroughly recounts the events at trial, including the discussions prior to the testimony at issue, the substance of the contested portion of Juan Carlos Lopez's testimony admitted into evidence as well as subsequent proceedings concerning the defense motion for mistrial, the Court finds little need for an independent factual recitation of these events.  In relevant part, the state appellate court accurately

observed the trial court, in denying the mistrial motion, concluded Lopez's testimony "was relevant to his credibility and to explain his 'strong physical reaction' when on direct examination he identified Gonzalez as the shooter" as well as noted it gave the jury an "admonition or limiting instruction and also stated Juan Carlos Lopez's testimony about Gonzalez's threat was not so prejudicial as to warrant a mistrial because Martinez was expected to testify regarding that threat anyway." (ECF No. 5-7 at 51.)

The state court concluded the trial court's reasoning was sound and did not amount to an abuse of discretion, stating: "In light of the inconsistencies in Juan Carlos Lopez's previous statements and possible involvement in hiding and/or editing the surveillance camera video recording and his distressed appearance while identifying Gonzalez in court as the shooter, the court reasonably concluded his testimony regarding the threat from Gonzalez was highly relevant to his state of mind and credibility." (Id. at 56.) Importantly, the state court addressed and rejected Petitioner's assertion of prejudice, citing Martinez's testimony about the threats Gonzalez made and finding both testimonies independently relevant, concluding: "Juan Carlos Lopez's testimony was distinctly relevant to show his state of mind and credibility, whereas Martinez's testimony was relevant to Gonzalez's consciousness of guilt as well as providing evidentiary support for Juan Carlos Lopez's testimony regarding Gonzalez's threat," as well as citing the contemporaneous limiting instruction the trial court provided concerning Lopez's testimony. (Id. at 56-57.)

The state court's conclusion was reasonable and finds ample record support.  In addition to reasonably finding Lopez's testimony about the threat relevant to his credibility given his prior inconsistent testimony and actions in delaying and/or actively thwarting police efforts to locate and view the surveillance video, and the independent finding of relevance concerning Martinez's testimony, the state court noted the trial court also provided the jury with a cautionary limiting instruction on the contested testimony. Immediately prior to Lopez testifying about the threats relayed to him through Martinez, the trial court specifically instructed the jury as to the limitations on considering the evidence, as follows: "I'm going to allow this information in not for the -- for a limited

36

purpose.  It is not for the truth of what really was said.  It is for the impact on the person that heard it.  Whether the words were true or not, this is just for how Mr. Lopez reacted." (RT 421.)

The state court also conducted its own harmlessness analysis under federal law in addition to the state law determination, as follows:

> Therefore, even had the trial court excluded Juan Carlos Lopez's testimony about Gonzalez's threat, it is not reasonably probable Gonzalez would have obtained a more favorable verdict. (*People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).) Even under the less forgiving standard for federal constitutional error, we conclude any error in admitting Juan Carlos Lopez's testimony regarding Gonzalez's threat was harmless beyond a reasonable doubt. (*Chapman*, *supra*, 386 U.S. at p. 24.) Accordingly, contrary to Gonzalez's assertion, any error under Evidence Code section 352 by the trial court in admitting Juan Carlos Lopez's testimony regarding his (Gonzalez's) threat does not require reversal of his convictions.

(Id. at 58-59.)

As Respondent correctly observes, under Davis v. Ayala, 576 U.S. 257 (2015), when a state court conducts such an analysis, a habeas court must review the reasonableness of state court's harmlessness determination to determine whether relief is warranted.  (See ECF No. 12-1 at 28); see Ayala, 576 U.S. at 269 ("When a Chapman decision is reviewed under AEDPA, 'a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable.'"), quoting Fry v. Pliler, 551 U.S. 112, 119 (2007) (emphasis in original).

Given the deferential standard of review under AEPDA and after reviewing the state court's detailed and well-reasoned discussion of the issues surrounding the admission of Lopez's testimony about Petitioner's threats, the Court is compelled to conclude the state court reasonably found any potential federal error harmless.  As the state court recounted, Martinez testified after Lopez and similarly detailed the threats Petitioner made against Lopez and his family.  Specifically, Martinez testified Petitioner asked him to tell Lopez "to not show up in court and that he (Juan Carlos Lopez) was being a 'snitch,'" told Martinez "he knew Juan Carlos Lopez's family, knew where they lived, and where Juan

Carlos Lopez's children went to high school, specifying it by name," and told Martinez "he 'didn't want to kill them,' so Juan Carlos Lopez should not come to court."  (ECF No. 5-7 at 51.)  In view of Martinez's direct testimony about Petitioner's threats, the limiting instruction the trial court gave immediately before Lopez's testimony on the matter, and the considerable other evidence supporting the convictions, the Court is not persuaded that any error in admitting and/or failing to sanitize Juan Carlos Lopez's testimony rose to the level of a constitutional violation, and even if it did, it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  <u>Brecht</u>, 507 U.S. at 637; <u>see</u> <u>also</u> <u>Ayala</u>, 576 U.S. at 270 ("[A] prisoner who seeks federal habeas corpus relief must satisfy <u>Brecht</u>, and if the state court adjudicated his claim on the merits, the <u>Brecht</u> test subsumes the limitations imposed by AEDPA."), citing <u>Fry</u>, 551 U.S. at 119-20.

Because Petitioner fails to demonstrate the state court rejection of Claim Three was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts, <u>see</u> <u>Richter</u>, 562 U.S. at 97-98, habeas relief is not available.

### 4.   Claim Four

In Claim Four, Petitioner contends the cumulative effect of errors impacted his trial proceedings, violating Petitioner's federal due process rights and resulting in a fundamentally unfair trial.  (ECF No. 1 at 10; ECF No. 1-2 at 37-39.)  Respondent maintains the state court's rejection of Claim Four "was reasonable" and "[a]s succinctly determined by the state court, <i>Chavez</i>, 22 Cal.App.5th at 707, n. 19, because Gonzalez failed to establish any substantial constitutional error occurred based on any of his claims, he cannot show he was harmed by cumulative error."  (ECF No. 12-1 at 29-30.)

"The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." <u>Parle v. Runnels</u>, 505 F.3d 922, 927 (9th Cir. 2007), citing <u>Chambers v.</u> <u>Mississippi</u>, 410 U.S. 284, 290 n.3 (1973); <u>see</u> <u>also</u> <u>Killian v. Poole</u>, 282 F.3d 1204, 1211 (9th Cir. 2002) ("[E]ven if no single error were prejudicial, where there are several

substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require reversal.'"), quoting <u>United States v. de Cruz</u>, 82 F.3d 856, 868 (9th Cir. 1996).

The Court again looks through the state supreme court's silent denial to the opinion issued by the state appellate court. The state appellate court rejected Petitioner's alternative contentions of ineffective assistance of counsel in failing to request exclusion or sanitization of the section 352 evidence and failing to adequately request a section 402 hearing and rejected Petitioner's claim of cumulative error, stating: "Likewise, because we conclude the trial court did not err as Gonzalez asserts, there is no cumulative prejudice from any such purported errors that requires reversal of his convictions. (Cf. *People v. Anderson* (2001) 25 Cal.4th 543, 606; *People v. Bolin* (1998) 18 Cal.4th 297, 335.)" (ECF No. 5-7 at 60-61 & n. 19.)

Because Petitioner fails to state a claim of constitutional error as to any of the claims presented in the instant Petition, the Court finds no possibility of cumulative error. <u>Mancuso v. Olivarez</u>, 292 F.3d 939, 957 (9th Cir. 2002) ("Because there is no single constitutional error in this case, there is nothing to accumulate to a level of a constitutional violation."), citing <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9th Cir. 1999), <u>overruled on other grounds by</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 482 (2000). Even in the event Petitioner was somehow able to demonstrate federal error occurred in the admission of Lopez's testimony about Petitioner's threats as alleged in Claim Three, it would be the sole error identified. Moreover, as the state court reasonably concluded, any such potential error was harmless.

It is evident the state court rejection of Claim Four was neither contrary to nor an unreasonable application of clearly established federal law nor was it based on an unreasonable determination of the facts. <u>Richter</u>, 562 U.S. at 97-98. As such, Claim Four does not merit habeas relief.

## V.   <u>CERTIFICATE OF APPEALABILITY</u>

A petitioner may not appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" except where "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C.A. foll. § 2254.  "A certificate of appealability should issue if 'reasonable jurists could debate whether' (1) the district court's assessment of the claim was debatable or wrong; or (2) the issue presented is 'adequate to deserve encouragement to proceed further.'"  <u>Shoemaker v. Taylor</u>, 730 F.3d 778, 790 (9th Cir. 2013), quoting <u>Slack</u>, 529 U.S. at 484.  The Court declines to issue a certificate of appealability, as reasonable jurists would not find debatable or incorrect the Court's conclusion that habeas relief is not warranted on any of the four claims presented in the federal Petition, nor does the Court find any of the issues presented merit encouragement to proceed further.  <u>See</u> 28 U.S.C. 2253(c); <u>Slack</u>, 529 U.S. at 484.

## VI.   CONCLUSION AND ORDER

For the reasons discussed above, the Court **DENIES** the Petition for a Writ of Habeas Corpus and **DENIES** a Certificate of Appealability.

**IT IS SO ORDERED.**

Dated:  February 14, 2022

Hon. Gonzalo P. Curiel
United States District Judge

40

19-cv-2326 GPC (WVG)